But if a cruise ship were, say, traveling from California and it docks in Honolulu Harbor and the passengers just disembark without providing short-term accommodations within the state's jurisdiction, the tax wouldn't be assessed against that ship. It only – it turns on the provision of short-term accommodations, not on the transportation of passengers. So that's how we know that what this tax is – But if a passenger pays $5,000 for a ticket and they leave Los Angeles and they go to Honolulu and they stay one night in Honolulu, you're charging tax on $5,000 for the full amount, aren't you? So if, say, the – it was one day – three days at – I'm just trying to make it simple. I don't think this cruise exists. One-day cruise, one night in Honolulu, direct from L.A. I'd pay $5,000 for the fare. In the hypothetical, that's correct, but the point is that – What's correct, that the entire $5,000 would be taxed? I mean, if it's an instantaneous transportation, so they leave L.A. and they immediately arrive in Honolulu, so they spend a night in Honolulu Harbor, that would be the cost of providing the short-term accommodation. And under the statute and the rules as they exist now, that's what would be assessed. See, that seems to run up against RHA, which says no taxes, tolls, operating charges on any passengers or crew if the vessel or watercraft is operating on any navigable waters. I mean, in the scenario I gave you, 98, 99 percent of the operation of the vessel is on navigable waters, and yet you're trying to charge the whole $5,000. I mean, you might have a better case if you tried to do it, you know, just based on the port, but that doesn't seem to be what – this isn't carved out that way. With respect to your hypothetical, Judge Nelson, I think it touches on Judge Beatty's question earlier, which is if the cruise ship was just docked on the port and providing short-term accommodations, the tax could be assessed against the provision of those short-term accommodations. In your hypothetical, there's really no time being spent for the transportation of passengers. And so because – you know, with the instantaneous trip from L.A. to Honolulu Harbor, the full duration of that trip would effectively be spent in Honolulu Harbor, and so the tax would be assessed against the entirety of the fare. I would just – I mentioned earlier Alaska versus Arctic made. That's the case in which the court upheld a sale – a state tax against the revenues derived from operating freezer fish. And one of the arguments was that there was the – there was transportation being – part of what was being taxed was the value of the transportation services. And what the Supreme Court said is, quote, part of the business is, of course, transporting frozen fish interstate. Yet it is plain that a freezer ship is more – much more than an interstate carrier. And the court upheld the tax, even though part of the revenues derived from that were necessarily from the service that they were providing for transportation. So the question is, what is the core taxable activity? And here, the core taxable activity that the statute is targeting is the provision of short-term accommodations. And the fact that there are other amenities that may be offered doesn't change what the tax is being assessed against. Counselor, did you cite that case in your brief, Alaska versus Arctic made? We didn't cite that case, but it's discussed in North Pacific Fishing Company. Well, I was just wondering because I – you know, if you say that case is dispositive, I was curious why it wasn't cited in your briefs. Yes. So with that case, it's a commerce clause challenge, so it's not a tonnage clause challenge. We think that gets to a broader thematic point that we make in our briefs, which is the tonnage clause is just a single tool within the constitutional framework for regulating interstate commerce. So to the extent that there are questions about the apportionment of the tax and whether the tax is capturing activity that can be reasonably attributed to the State of Hawaii, we think that those are questions for the commerce clause framework. Well, that doesn't seem to comport at all with the – I mean, granted, the Supreme Court hasn't weighed in very often on this, but the Supreme Court seems to have – I don't think I've ever read anything that the tonnage clause is coextensive with the commerce clause. We don't think that it is, and we think that that's the point. The tonnage clause is intended to facilitate these broader goals of interstate commerce, but it's narrowly about particular fees that the framers wanted to prescribe, which are fees for the privilege of access to a port. And so if a fee is operating or a tax is operating for the privilege of access to a port, then that would be presumptively barred by the tonnage clause, but every fee assessed against a ship isn't a fee for privilege of access to the port. So the income taxes that I mentioned at the top, if there's a transportation company like Matson or another cargo company that has a connection to a State, that State can tax the income from that business, even though that entire income is derived from transportation services. So the question is not whether the tax is being assessed against the business, but whether it's being assessed against the vessel for the act of entering the port and docking in the port. But this isn't an income tax. I mean, you're not – it seems to be something in addition to and different from the tax that these companies would pay when they do their business return and they pay tax on their income. I don't believe that – I'm not sure if the cruise ships here are paying income tax in Hawaii. I believe most of them are foreign flagged, so I think that there's some special protections for international ships. But the point is that it's getting at the business activity. So we think an income tax and a gross receipts tax are similar in that they're targeting the business or economic activity that's happening on the ship, and that's distinct against a tax or a fee imposed against the ship itself. So this argument is what the district court accepted and cited, State of Alaska v. North Pacific Fishing and Real Hooker Sport Fishing v. Department of Taxation. These two cases that the district court cited to draw this distinction and say, if you're taxing business, it's not the same as taxing the vessel. That's correct. We think that that distinction is right, and we think that those two cases support it. Counsel, did you want to address the Tax Injunction Act at all? Sure, Your Honor. As applied to CLIA or the United States, I'm happy as applied to CLIA. I don't think the United States would be barred from its claims. Do you think the Tax Injunction Act would bar the United States claims? We do, Your Honor. Like we argue in our briefs, the United States doesn't point to any case that recognizes the categorical exemption from the Tax Injunction Act for the federal government. The rule is instead the federal instrumentality doctrine. So where the federal government or one of its instrumentalities will be subject to State taxation, by virtue of sovereign immunity, they can proceed in federal court and circumvent the Tax Injunction Act's jurisdictional bar. But that exception has never been extended broader than that. So there's no case that the court has ever — any court has ever recognized this categorical exemption. The one case to have considered the issue is the County of Nassau case from EDNY, and that court squarely rejected it. It called the proposition that the United States could have this categorical exemption remarkable. Plaintiffs in their brief cite to the Arkansas case. The United States cites the Arkansas case where there is an isolated statement that where the United States is a party, the Tax Injunction Act doesn't apply. But the court very clearly cabineted its analysis, both preceding that and following that, to this federal instrumentality doctrine. So the United States here is not going to be subject to the tax. So we think the Tax Injunction Act would apply. Yes, Your Honor. But I thought the United States' position was we have a sovereign right here because taxes that are done in violation of our sovereign authority are being taxed. Why doesn't that give it a right? It doesn't have a way to challenge that under Hawaii law, does it? We point out in our briefs that intervention would be on its face. It appears to be a remedy available to them, and the United States doesn't meaningfully Intervention in what? In a challenge to the tax? Yes, in the underlying state tax dispute. So one of Clear's members is going to file, presumably if this court would block their action here, would file a tax refund action in state court, either under the assessment or the refund action procedure. And then on its face, the tax appeal court rules would provide for intervention. Plaintiff's only response is that, you know, we reserve the right to make any arguments about any action below, including intervention. But that's not dispositive for the purposes of the Tax Injunction Act. In Aeropolynesia, the State was actively contesting jurisdiction in the assessment procedure, and the Court still held that that action, that there was an adequate remedy in state court, even though there was. Yes, but have you, you have not withdrawn your right to oppose their intervention in state court, right? That's correct. But, you know, in Aeropolynesia, this. Seems a little hard to come in and say, oh, well, they have a right. But guess what? When they use that right, we're going to oppose it. Again, in Aeropolynesia, the State was actively contesting jurisdiction in the assessment procedure and saying the remedy was closed to the taxpayer. I just don't see how this is, what's the statutory term, you know, speedy, efficient, a plain, speedy and efficient remedy for the United States to intervene in state court when you yourself, as a State, have said we'll oppose their intervention to begin with. The one thing I'll add, Your Honor, is that the only case plaintiffs cite for the proposition that a remedy can be insufficiently plain is the Hillsborough case. And in Hillsborough, there was a single state court decision suggesting a remedy might be available. There were decisions predating and posting that decision that held it was squarely foreclosed. So in light of the affirmative evidence that a remedy was unavailable, the Court concluded that it was insufficiently plain. But here on its face, the procedures have intervention available in tax appeal court. Judge Rawlinson, to your question about the Tax Injunction Act as applied to CLIA, their argument about the remedy being insufficiently speedy, you asked whether or not there were any examples of it being insufficiently speedy. And they say no, because this is a new tax. The TAT has been assessed against hotels for decades. If there was any practice of this remedy being insufficiently speedy, they could have produced evidence here. It's plaintiff's burden to show. But the United States doesn't, they don't have to intervene in those cases, do they? And they, as the United States, your position is because we have imposed taxes on land-based hotels, and we've been able to do that in a speed, that's been able to be challenged in a speedy way, that shows that the TIA precludes the United States' action here. But my question is, the United States isn't ever involved in those cases because there isn't an equivalent RHA sovereign interest they're trying to defend, is there? I think your answer was talking about CLIA. Yes, yes. So I was discussing the Tax Injunction Act as it applies to CLIA. So for the speediness, it's plaintiff's burden to establish subject matter jurisdiction that includes the Tax Injunction Act doesn't apply. And here they just haven't made even allegations that the State is going to wait four years before the assessment is levied. I see that my time is coming to an end. Are there any other questions? Thank you, Counsel. Do you want to wrap up? Yes, we just ask that the Court affirm the District Court's denial of the preliminary injunction. Thank you. All right. Thank you, Counsel. Rebuttal. Thank you, Your Honor. A few quick points. Mr. Teo said that every federal court to have addressed this issue has come out their way. He didn't specify what those courts were. I'm frankly not sure. The only one I'm aware of that has resolved a claim like this on the merits is the Mayor Terminal's case. Mayor Terminal's involved a tax on land-based property. It didn't involve a tax on vessels or the revenue from vessels or anything like that. So this sort of broad pronouncement, if you push past it, it just doesn't work. The best illustration of that is that when he went on to list cases, he identified a bunch of cases that are not cited in the briefs and that did not involve the tonnage clause or the RHA, which I think is a pretty strong tell that they don't have much to go on on the things that are actually raised here. The other thing I didn't hear Mr. Teo talk about is the text of the RHA. The text of the RHA says that no impositions whatever may be levied on vessels. And as I pointed out in my opening, Hawaii has acknowledged time and time again that Act 96 levies taxes on vessels. So Governor Greene's office, after the tax was enacted, said very clearly that, I'm quoting, that Act 96 levies for the first time the TAT on cruise ships that port in the state. That is acknowledging a violation of the RHA. The existing TAT says, this is in Section 237D-15B, it describes the transient accommodations tax as being, quote, levied, assessed, and collected upon transient accommodations, close quote. That is, again, an acknowledgment that this tax is being levied on cruise ships. Judge Beatty, you asked about the mayor terminals case in the Third Circuit. As I suggested, I don't think there's any suggestion that there would be a conflict between a decision in our favor here and that case there, because that case didn't involve taxes on vessels at all. It was taxes on land-based property. That was the primary problem with the merits of that claim. And I've- Was that case addressing whether the plaintiffs were in the zone of interest of the statute? It does. So the case says that in order to come within the zone of interest of the RHA, the plaintiff needs to challenge injury because of a tax imposed on a vessel. It wasn't present there because the tax was being imposed on the marine terminals, the shore-based, the land-based property. Here it is being imposed because, as I just said, Hawaii has acknowledged that this tax is levied upon cruise ships. The final thing I'll say, and I apologize for running over my time, but is that my friend talked about income taxes and sales taxes. I think all of those, you don't need to discuss those. Those are worlds away from this one because none of those taxes speak specifically about imposing a tax for the number of days that a vessel spends in port. All right, counsel, I understand your argument. Thank you. Just a few quick points for me as well. So on jurisdiction, I'll sort of finish where I started with little man in the boat. This court rejected the availability of a private right of action for damages under the RHA in part because it said this is historically an area that has been in place for a long time and that the federal government comes in and enforces. So I think it would be very odd to suggest that the United States doesn't have standing to assert a violation of the RHA. On the Tax Injunction Act, it's not just the Arkansas Supreme Court decision's isolated statement that the Tax Injunction Act doesn't apply when the United States is a party. If you look at the reasoning of that opinion and where that statement comes from, it's not just this instrumentality doctrine. There's a clear statement rule. And that rule is, quote, it's well settled that the government is not bound by its own legislative restrictions of remedial rights unless the intent to bind is expressed. There's no express intent to bind the United States in the Tax Injunction Act just like there's no express intent to bind the United States in the Anti-Injunction Act where courts have long held that it simply doesn't apply when the U.S. is a party. But again, the court doesn't need to go that far. There's clearly no plain remedy for the United States. Opposing counsel said that we hadn't cited cases showing that there's no plain remedy, but Hyatt v. Yee at page 1073, which we've cited, says to be plain, a remedy must be certain. An opposed motion to intervene in a hypothetical litigation brought by a third party over whom the United States has no control is clearly not a certain path for the United States to vindicate its interests. Finally, we haven't talked about the equities on this preliminary injunction, but as, again, little man in the boat said, the RHA limits the conduct of non-federal entities for the benefit of the public at large. We ask that you reverse. Thank you. Thank you, counsel. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court. But if a cruise ship were, say, you know, and it just, and the passengers just disembark without providing short-term accommodations within the State's jurisdiction, the tax wouldn't be assessed against that ship. It only, it turns on the provision of short-term accommodations, not on the transportation of passengers. So that's how we know that what this tax is. But if a passenger pays $5,000 for a ticket and they leave Los Angeles and they go to Honolulu and they stay one night in Honolulu, you're charging tax on $5,000 for the full amount, aren't you? So if, say, the, it was one day, you know, three days at. I'm just trying to make it simple. I don't think this cruise exists. One day cruise, one night in Honolulu, direct from L.A. I pay $5,000 for the fare. In the hypothetical, that's correct. But the point is that. What's correct, that the entire $5,000 would be taxed? I mean, if it's an instantaneous transportation, so, you know, they leave L.A. and they immediately arrive in Honolulu, so they spend a night in Honolulu Harbor, that would be the cost of providing the short-term accommodation. And under the statute and the rules as they exist now, that's what would be assessed. See, that seems to run up against RHA, which says no taxes, tolls, operating charges on any passengers or crew if the vessel or watercraft is operating on any navigable waters. I mean, in the scenario I gave you, 98, 99% of the operation of the vessel is on navigable waters, and yet you're trying to charge the whole $5,000. I mean, you might have a better case if you tried to do it, you know, just based on the port, but that doesn't seem to be what isn't carved out that way. With respect to your hypothetical, Judge Nelson, I think it touches on Judge Beatty's question earlier, which is if the cruise ship was just docked in the port and providing short-term accommodations, the tax could be assessed against the provision of those short-term accommodations. In your hypothetical, there's really no time being spent for the transportation of passengers, and so with the instantaneous trip from L.A. to Honolulu Harbor, the full duration of that trip would effectively be spent in Honolulu Harbor, and so the tax would be assessed against the entirety of the fare. I mentioned earlier Alaska v. Arctic Maid. That's the case in which the court upheld a state tax against the revenues derived from operating freezer fish, and one of the arguments was that there was transportation being, part of what was being taxed was the value of the transportation services, and what the Supreme Court said is, quote, part of the business is, of course, transporting frozen fish interstate, yet it is plain that a freezer ship is more, much more, than an interstate carrier, and the court upheld the tax, even though part of the revenues derived from that were necessarily from the service that they were providing for transportation. So the question is, what is the core taxable activity? And here, the core taxable activity that the statute is targeting is the provision of short-term accommodations, and the fact that there are other amenities that may be offered doesn't change what the tax is being assessed against. Counselor, did you cite that case in your brief, Alaska v. Arctic Maid? We didn't cite that case, but it's discussed in North Pacific Fishing Companies. I was just wondering, because if you say that case is dispositive, I was curious why it wasn't cited in your briefs. So with that case, it's a commerce clause challenge, so it's not a tonnage clause challenge. We think that gets to a broader thematic point that we make in our briefs, which is the tonnage clause is just a single tool within the constitutional framework for regulating interstate commerce. So to the extent that there are questions about the apportionment of the tax and whether the tax is capturing activity that can be reasonably attributed to the state of Hawaii, we think that those are questions for the commerce clause framework. Well, that doesn't seem to comport at all with the – I mean, granted, the Supreme Court hasn't weighed in very often on this, but the Supreme Court seems to have – I don't think I've ever read anything that the tonnage clause is coextensive with the commerce clause. We don't think that it is, and we think that that's the point. The tonnage clause is intended to facilitate these broader goals of interstate commerce, but it's narrowly about particular fees that the framers wanted to prescribe, which are fees for the privilege of access to a port. And so if a fee is operating or a tax is operating for the privilege of access to a port, then that would be presumptively barred by the tonnage clause, but every fee assessed against a ship isn't a fee for privilege of access to the port. So the income taxes that I mentioned at the top, if there's a transportation company like Mattson or another cargo company that has a connection to a State, that State can tax the income from that business, even though that entire income is derived from transportation services. So the question is not whether the tax is being assessed against the business, but whether it's being assessed against the vessel for the act of entering the port and docking in the port. But this isn't an income tax. I mean, it seems to be something in addition to, different from the tax that these companies would pay when they do their business return and they pay tax on their income. I don't believe that. I'm not sure if the cruise ships here are paying income tax in Hawaii. I believe most of them are foreign flagged, so I think that there's some special protections for international ships. But the point is that it's getting at the business activity. So we think an income tax and a gross receipts tax are similar and that they're targeting the business or economic activity that's happening on the ship, and that's distinct against a tax or a fee imposed against the ship itself. So this argument is what the district court accepted and cited, State of Alaska versus North Pacific Fishing, and Real Hooker Sport Fishing versus Department of Taxation. These two cases that the district court cited to draw this distinction and say if you're taxing business, it's not the same as taxing the vessel. That's correct. We think that that distinction is right, and we think that those two cases support it. Counsel, did you want to address the Tax Injunction Act at all? Sure, Your Honor. As applied to CLIA or the United States, I'm happy to. As applied to CLIA. I don't think the United States would be barred from its claims. Do you think the Tax Injunction Act would bar the United States' claims? We do, Your Honor. Like we argue in our briefs, the United States doesn't point to any case that recognizes a categorical exemption from the Tax Injunction Act for the federal government. The rule is instead the federal instrumentalities doctrine. So where the federal government or one of its instrumentalities will be subject to state taxation by virtue of sovereign immunity, they can proceed in federal court and circumvent the Tax Injunction Act's jurisdictional bar. But that exception has never been extended broader than that. So there's no case that the court has ever – any court has ever recognized this categorical exemption. The one case to have considered the issue is the County of Nassau case from E and Y, and that court squarely rejected it. It called the proposition that the United States could have this categorical exemption remarkable. Plaintiffs in their brief cite to the Arkansas case, the United States cites to the Arkansas case, where there is an isolated statement that where the United States is a party, the Tax Injunction Act doesn't apply. But the court very clearly cabineted its analysis, both preceding that and following that, to this federal instrumentalities doctrine. So the United States here is not going to be subject to the tax, so we think the Tax Injunction Act would apply. Even – yes, Your Honor. But I thought the United States' position was we have a sovereign right here because taxes that are done in violation of our sovereign authority are being taxed. Why doesn't that give it a right? It doesn't have a way to challenge that under Hawaii law, does it? We point out in our briefs that intervention would be on its face. It appears to be a remedy available to them. And the United States doesn't meaningfully – Intervention in what? In a challenge to the tax in Hawaii? Yes, in the underlying state tax dispute. So one of Clear's members is going to file, presumably if this court would block their action here, would file a tax refund action in State court, either under the assessment or the refund action procedure. And then on its face, the tax appeal court rules would provide for intervention. Plaintiff's only response is that, you know, we reserve the right to make any arguments about any action below, including intervention. But that's not dispositive for the purposes of the Tax Injunction Act. In Aeropolynesia, the State was actively contesting jurisdiction in the assessment procedure, and the court still held that that action, that there was an adequate remedy in State court, even though there was. Yes, but have you – you have not withdrawn your right to oppose their intervention in State court, right? That's correct. But, you know, in Aeropolynesia, this – It seems a little hard to come in and say, oh, well, they have a right. But guess what? When they use that right, we're going to oppose it. Again, in Aeropolynesia, the State was actively contesting jurisdiction in the assessment procedure and saying the remedy was closed to the taxpayer. Well, I just don't see how this is – what's the statutory term? You know, speedy, efficient – a plain, speedy and efficient remedy for the United States to intervene in State court when you yourself, as a State, have said we'll oppose their intervention to begin with. The one thing I'll add, Your Honor, is that the only case plaintiffs cite for the proposition that a remedy can be insufficiently plain is the Hillsborough case. And in Hillsborough, there was a single State court decision suggesting a remedy might be available. There were decisions predating and posting that decision that held it was squarely foreclosed. So in light of the affirmative evidence that a remedy was unavailable, the Court concluded that it was insufficiently plain. But here on its face, the procedures have intervention available in tax appeal court. Judge Rawlinson, to your question about the Tax Injunction Act as applied to CLIA, there are arguments about the remedy being insufficiently speedy. You asked whether or not there were any examples of it being insufficiently speedy, and they say no because this is a new tax. The TAT has been assessed against hotels for decades. If there was any practice of this remedy being insufficiently speedy, they could have produced evidence here. It's plaintiff's burden to show – But the United States doesn't – they don't have to intervene in those cases, do they? As a United States – your position is because we have imposed taxes on land-based hotels and we've been able to do that in a – that's been able to be challenged in a speedy way, that shows that the TIA precludes the United States action here. But my question is the United States isn't ever involved in those cases because there isn't an equivalent RHA sovereign interest they're trying to defend. Is there? I think your answer was talking about CLIA. Yes, yes. It's not the United States. I was discussing the Tax Injunction Act as it applies to CLIA. So for the speediness, it's plaintiff's burden to establish subject matter jurisdiction that includes the Tax Injunction Act doesn't apply. And here they just haven't made even allegations that the state is going to wait four years before the assessment is levied. I see that my time is coming to an end. Are there any other questions? Thank you, Counsel. Do you want to wrap up? Yes. We just ask that the Court affirm the district court's denial of the preliminary injunction. Thank you. All right. Thank you, Counsel. Rebuttal. Thank you, Your Honor. A few quick points. Mr. Teo said that every federal court to have addressed this issue has come out their way. He didn't specify what those courts were. I'm frankly not sure. The only one I'm aware of that has resolved a claim like this on the merits is the Mayor Terminal's case. Mayor Terminal's involved a tax on land-based property. It didn't involve a tax on vessels or the revenue from vessels or anything like that. So this sort of broad pronouncement, if you push past it, it just doesn't work. The best illustration of that is that when he went on to list cases, he identified a bunch of cases that are not cited in the briefs and that did not involve the tonnage clause or the RHA, which I think is a pretty strong tell that they don't have much to go on, on the things that are actually raised here. The other thing I didn't hear Mr. Teo talk about is the text of the RHA. The text of the RHA says that no impositions whatever may be levied on vessels. And as I pointed out in my opening, Hawaii has acknowledged time and time again that Act 96 levies taxes on vessels. So Governor Green's office, after the tax was enacted, said very clearly that, I'm quoting, that Act 96 levies for the first time the TAT on cruise ships that port in the state. That is acknowledging a violation of the RHA. The existing TAT says, this is in Section 237D-15B, it describes the transient accommodations tax as being, quote, levied, assessed, and collected upon transient accommodations, close quote. That is, again, an acknowledgment that this tax is being levied on cruise ships. Judge Beatty, you asked about the mayor terminals case in the Third Circuit. As I suggested, I don't think there's any suggestion that there would be a conflict between a decision in our favor here and that case there, because that case didn't involve taxes on vessels at all. It was taxes on land-based property. That was the primary problem with the merits of that claim. And I've — Sotomayor, was that case addressing whether the plaintiffs were in the zone of interest of the statute? It does. So the case says that in order to come within the zone of interest of the RHA, the plaintiff needs to challenge injury because of a tax imposed on a vessel. It wasn't present there because the tax was being imposed on the marine terminals, the shore — the land-based property. Here it is being imposed because, as I just said, Hawaii has acknowledged that this tax is levied upon cruise ships. The final thing I'll say, and I apologize for running over my time, but — is that my friend talked about income taxes and sales taxes. I think all of those — you don't need to discuss those. Those are worlds away from this one because none of those taxes speak specifically about imposing a tax for the number of days that a vessel spends in port. Thank you, Your Honor. All right, counsel, I understand your argument. Thank you. Just a few quick points for me as well. So on jurisdiction, I'll sort of finish where I started with little man in the boat. This court rejected the availability of a private right of action for damages under the RHA, in part because it said this is historically an area that the federal government comes in and enforces. So I think it would be very odd to suggest that the United States doesn't have standing to assert a violation of the RHA. On the Tax Injunction Act, it's not just the Arkansas Supreme Court decision's isolated statement that the Tax Injunction Act doesn't apply when the United States is a party. If you look at the reasoning of that opinion and where that statement comes from, it's not just this instrumentality doctrine. There's a clear statement rule, and that rule is, quote, that the government is not bound by its own legislative restrictions of remedial rights unless the intent to bind is expressed. There's no express intent to bind the United States in the Tax Injunction Act, just like there's no express intent to bind the United States in the Anti-Injunction Act, where courts have long held that it simply doesn't apply when the U.S. is a party. But, again, the court doesn't need to go that far. There's clearly no plain remedy for the United States. Opposing counsel said that we hadn't cited cases showing that there's no plain remedy, but Hyatt v. Yee at page 1073, which we've cited, says to be plain, a remedy must be certain. An opposed motion to intervene in a hypothetical litigation brought by a third party over whom the United States has no control is clearly not a certain path for the United States to vindicate its interests. Finally, we haven't talked about the equities on this preliminary injunction. But, as, again, little man in the boat said, the RHA limits the conduct of nonfederal entities for the benefit of the public at large. We ask that you reverse. Thank you. Thank you, counsel. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, NELSON, BADE